Good morning. The United States Court of Appeals for the Ninth Circuit is now in session. Good morning everyone. We will take the cases up in the order in which they appear on the docket. The first three cases have been submitted on the briefs. Albrecht v. Kajikazi, Gonzales v. Garland, and Campos-Tiznado v. Garland. And we will take up Phillips-Harris and Yo v. BMW of North America. Mr. Vachon, you may begin. Before I begin, I just wanted to say that I think the timing was incorrect. It's five minutes for myself to begin with and then ten minutes for Ms. Bennett, not the other way around. I have you down as ten minutes apiece. Our plan was I do five, Ms. Bennett does 15 minutes, and then we reserve five minutes for rebuttal. Well, that's 25 minutes. Sorry, the five minutes, the extra five minutes for Mr. Vachon's time would be for rebuttal instead is the plan. So he'll do five minutes. Exactly right. Yes. Okay. I'm glad we all have this straight. Mr. Vachon, you go first. Five minutes. Your honors, under controlling precedent, BMW of North America has the burden of proving three elements to establish that it's a third party beneficiary. I'm going to briefly address each element and explain why it cannot satisfy any of them. The first prong asks whether the contract actually confers a benefit on the third party. In this appeal, the arbitration clause has definitions applicable for the words I, me and you. And taking into account those definitions, it states that either Phillips Harris or the dealership, including its assignee, may elect arbitration of any dispute between them. Throughout this case, BMW of North America fails to address that clear language and instead argues that we should focus on language that defines the types of claims between Phillips Harris and the dealership that are subject to arbitration. But that argument is untenable because under California law, we have to take the whole of the contract together with each clause helping to interpret the other. Thus, we cannot interpret the contract such that the language describing which types of claims between the two of them are arbitrable, nullifies the clear statement that only claims between the two of them are subject to arbitration. So in this case, the contract does not... I want to understand your argument and I assume it's the same argument in this as the third party beneficiary that Ms. Bennett makes. You're not disputing that this arbitration agreement is broad enough to cover a claim, just focusing solely on the claim language, like the one that's being made in this case. You're just saying that it doesn't include BMW as a third party beneficiary. I'm not sure I understand, but what I am... The definition of claim is quite broad. Correct. And as I read the definition of claim, it would... If the appropriate parties were involved, it could involve a warranty claim against the manufacturer. So for example, if you were making a product liability claim and you were making it against a dealership, even though it arose out of the manufacturer's actions, that would still be arbitrable, right? I disagree. And the reason for that is... You have an agreement with the dealership that says you'll arbitrate all claims with it. We do not have such an agreement. What you are focusing on is the definition of claim. It is just defining a word. And the arbitration agreement states after defining the word claim that either Phillips Harris or the dealership may elect that a claim be arbitrated. That's right. That's right. So you should be... Don't be so wary. You're agreeing with me. Okay. What you're saying is if this were with the dealership, you'd have to arbitrate. Correct. So the definition of claim is broad enough to cover the subject matter of your lawsuit. Your contention is... Don't fight me. I'm trying to help you. Your contention is that the definition of the parties that have the ability to arbitrate is not broad enough to cover BMW. Correct? I agree with that with one caveat, and that is BMW is basing its ability to arbitrate on the use of the word affiliates in the arbitration clause. And if you look at the context in which it is used, it is you or your employees, officers, directors, affiliates, successors, or assigned. The affiliates of you or I. And what you're saying is they're not affiliates of the dealership or the buyer. Yes, but I'm also saying that in that list, all the items other than affiliates are either parties who act on behalf of the dealership or parties that stand in the dealer's shoes. And for that reason, I think because affiliates is such a general word, we should Why isn't the dealer an affiliate? Well, the dealer is a party. It's not an affiliate. Why isn't BMW an affiliate of the dealer? Because I believe in this case, the definition of... I'm sorry. The word affiliate is used to describe persons who are either acting on the dealer's behalf or in the shoes of the dealer. Additionally, since this is an adhesion contract, any ambiguities in the contract must be drawn in my client's favor. And for those reasons, I don't think that it qualifies as an affiliate. But my main argument, just to be clear, is that regardless of the definition of claim, the contract states that only the dealership or Phillips-Harris can elect arbitration of a claim. Should I continue? You have 17 seconds left. Oh no, I'm sorry. That's wrong. You're over your time. So let's take... Thank you, Your Honors. Thank you. May it please the court. Jennifer Bennett on behalf of the appellant, Ms. Ngo. In my limited time, I'd like to focus on just one main point on each of the two doctrines that BMW invokes in its effort to require Ms. Ngo to arbitrate her claims against the company, even though she never agreed to do so. As to the company's third-party beneficiary argument, the text of Ms. Ngo's financing agreement, as Judge Hurwitz was pointing out, the text of that agreement with her car dealership itself demonstrates that the parties did not expressly intend it to the contrary. Over and over again, the contract expressly states that only Ms. Ngo and Peter Pan Motors may compel arbitration. And as to the company's equitable estoppel argument, it's well established that equitable estoppel under California law applies only where a plaintiff's claims rely on the terms of the contract. Here, Ms. Ngo would have exactly the same claims if she had no financing agreement with her dealership at all. These two points are all that's needed to resolve this appeal, and frankly, all of the appeals that you're hearing today. So I'll start very briefly with the third-party beneficiary argument before hopefully spending most of my time on estoppel. So as Mr. Vachon mentioned, it's BMW's burden to prove that the parties expressly intended it to be a third-party beneficiary of the arbitration clause. And here we have a contract that expressly says the opposite. The contract repeatedly states that only you and we, Ms. Ngo and Peter Pan Motors, can compel arbitration. So you look at the front of the contract, there's a box about three-quarters of the way down on ER 27. This is the only place where Ms. Ngo actually agreed to arbitrate. This is where she signed. And the description of the thing she was agreeing to says, by signing below, you agree that you or we, Ms. Ngo or Peter Pan Motors, may elect to resolve any dispute by arbitration. And then the details of what that arbitration requires are provided on the back of the contract. And again, the back of that contract reiterates over and over again the same point in all caps at the very top. This is ER 31. In all caps at the very top of the arbitration box, the very first statement is either you or we may choose to arbitrate. And then after it lists the disputes, the arbitration clause again emphasizes that even if those disputes involve third parties, arbitration will still be only at your or our election. So just so we're clear, and I think when we when I finished with Mr. Michon, we were, but I want to make sure, if you had brought this claim against the dealer, do you agree it would be subject to the arbitration clause? Yes, I agree with that. And the reason it's not subject here is because the clause specifies that only the dealer or Ms. Ngo can compel arbitration. And I'll note in this appeal, even if this court were to choose to ignore the express limitations to you and we, that still wouldn't be enough here for BMW to be a third-party beneficiary. There is no affiliates language in this contract. So even though that language doesn't matter in the in the first appeal either because of the express limitations, that language isn't here in this contract at all. And not only that, but BMW concedes that it's not an affiliate of the dealership. Affiliate typically means something like corporate affiliates. It's typically narrow and BMW concedes it doesn't count. And so the court would have to not only disregard all of the limitations of the arbitration clause, which this court in Welsh says it can't do, but it would also have to add in language and not just affiliates language, but something like, you know, affiliates of subsidiaries once removed of assignees. In other words, the court would have to strike several terms of the contract and add several more. And that's just not how third-party beneficiary works under California law. What was the district court's reasoning in ruling against your client in ordering the case to arbitration? The district court relied on the fact that these claims arose out of the condition of the car and on that reasoning, anybody could compel or any third party who had an issue with Ms. Noh about the condition of her car could compel arbitration. You know, we mentioned in the brief of a drunk driver hit Ms. Noh and she sued them for fix her car. They could take advantage of the arbitration clause in this contract. And so what the district court did is it confused this idea of what the claims that can be arbitrated are with who can compel arbitration of those claims. It is a bit, I mean, it's a little bit illogical to have a claim definition defined so broadly that the arbitration clause has this narrow view of who can enforce arbitration. It's kind of an illogical thing within the contract. Would you agree with that? I think there are two answers to that. So one is that parties, even when they are intending just to benefit themselves with an arbitration clause, they often define the claims provision really broadly to ensure that anything that might come up, they have the power to compel arbitration. So you see that in the Welch case is a good example, the White v. Law, Sunoco case, the Lawson case. It's pretty common actually for parties to do that. And here you can imagine cases in which that would make sense. So if, for example, BMW, not BMW, the dealership contracted with another company to deliver Ms. Noh's car and it got damaged. And Ms. Noh sued the dealership as well as that other company saying you damaged my car. The third party, it has the power to compel arbitration. But even more than that, the second answer to that question is even if it's not clear why the parties included this language, what is clear is that they included repeated express limitations on who can compel arbitration. And so to allow BMW to compel arbitration would be to disregard what the party's clear intent is, which is that only Ms. Noh and the dealership can compel arbitration. And that would violate both the text of the arbitration clause itself, as well as the party's reasonable expectations. You know, BMW has a dispute resolution provision in its warranty and it says you can go to court. So the idea that a consumer would think that a contract that says only you and we can compel arbitration would allow BMW, which says you can go to court to take advantage of that, would just violate the reasonable expectations of that consumer. Counsel, can I ask you to, in your limited time, to switch to equitable estoppel for a moment? Yes, your honor. Let's assume, probably contrary to the record, that I understand what the California rule of equitable estoppel is with respect to arbitration contracts. And just tell me what, how you deal with the Phyllis Silda case, or however it's pronounced from the Court of Appeal. Sure. So Phyllis Silda, this court shouldn't follow Phyllis Silda, and there's two reasons for that. And I'll explain both of them. But before I do that, I just want to note that you don't have to take my word for it that Phyllis Silda doesn't apply to this situation. The vast majority of courts that have looked at this issue since Phyllis Silda was decided have held that. And that's not just federal district courts, but several state courts, which are bound to apply an on-point California Court of Appeal decision, have held that it doesn't apply to this situation. And that's for two reasons. First, the question in Phyllis Silda was different than the question here. In Phyllis Silda, the question was whether the dealership, and this is similar to what Judge Wardlaw was getting at, I think, previously when he talked about what situation would you use this kind of broad claim wording in. In Phyllis Silda, the question was whether the dealership, the we of you and we, may compel arbitration, whether the dealership could compel arbitration of a single claim against both it and the manufacturer. And that's just not what we have here. And viewed in that context, Phyllis Silda's holding makes sense. What Phyllis Silda is saying is that the dealership could compel arbitration of that single claim, even though it involved a third party. Here, the dealership isn't a party, so there's no textual hook the way there was in Phyllis Silda for compelling arbitration. But second, Phyllis Silda called what it was doing equitable estoppel, but it didn't apply anything like what that doctrine has long been understood to require under California law. So if you take a look at, for example, the California Court of Appeals decision in Goldman, which examines in depth California equitable estoppel, or this court's decision in Murphy, or more recently Jarboe or Frost, literally any other decision from the California Court of Appeal or from this court on equitable estoppel in the arbitration context under California law, what you'll see is they all say the same thing, that equitable estoppel applies only where a plaintiff's claims rely on or are intertwined with the contract containing the arbitration clause. And so what these decisions do is they look to the complaint and they determine whether the claims the plaintiff is seeking to enforce are seeking to enforce the terms of the contract against the defendant. So your position, if I understand it correctly, is that we simply don't have to scratch our heads about whether any deference is owed to Felisola because it's not because the the facts are different? I'm sorry, I'm not sure I understood the last part of that question. Your position, as I understand it, is we don't have to scratch our heads about whether the case is one we're obligated to follow because the facts are sufficiently different, so it's not any under your case. I see, I think there are two reasons that this court doesn't have to follow it. That's one, you know, Felisola has some perplexing language about equitable estoppel, but ultimately what it held is that the dealership could compel arbitration under an arbitration clause that says the dealership could compel arbitration. But second, even if there weren't this factual distinction, this court's job is to determine what the California Supreme Court would and what this court doesn't do is just follow blindly the most recent decision or the most factually similar decision. We do give respect and deference to decisions of intermediate courts of appeal, and so I guess then the question would be what California Supreme Court case tells us that this court of appeal decision is wrong, if you want us to get to that second issue? Of course, so there is no California Supreme Court case on equitable estoppel in the arbitration context at all, and so what we're faced with is every, literally every other California court of appeal and every decision of this court, including since Felisola, saying what California law says you do is you look at the claims and you figure out if they're trying to enforce the terms of the contract. And then you have on the other side, you have this one decision, Felisola, which is an applying equitable estoppel, but nothing like anything under California law, but nothing like what equitable estoppel has ever been used to be under California law is what it does. And so for, you know, and so it wouldn't make sense for this court to say, look, we know California law is different, but nevertheless, we're going to apply this one outlier decision. If that was what were to happen, this court's case law and what California law would, of course, swing back and forth all the time when there's one outlier decision that happens to be published. You know, and I'll note that Felisola is not the only on-point decision. This court has, for example, the California Court of Appeals decision in Frost, which was exactly this issue, whether the manufacturer can enforce an arbitration clause in the retailer's contract, except it was about a phone and not a car, but that same issue, the California Court of Appeals said that it couldn't do that. And so even if you have the California Court of Appeals decision in Frost, and I'll just, the last thing I'll note is that if this court has any doubt about whether the California Supreme Court is going to follow what every other court of appeal in the state has done, or whether it's going to follow this outlier decision that doesn't even really apply on its facts, just happened to use the term equitable estoppel. And I think it would make sense to certify that question to the California Supreme Court. I'll reserve the rest of my time for rebuttal unless there are any. Counselor, you're over your time, but let's hear from Mr. Peterson. Mr. Peterson has 20 minutes. Blanca? Something wrong with the clock. I'm working on it. Sorry, Judge. Okay. Okay. Thank you. You may proceed, Mr. Peterson. Thank you, Your Honor. Good morning. May it please the court. Can everyone hear me? Yes, we can. Right. So I represent BMW and each of these initially on the third party beneficiary viewpoint. And at the outset, I'd like to remind the court, in March of this year, this issue came before the court in the Hajebekian case, which we have drawn to your attention. And in that case, we were dealing with an arbitration clause also involving BMW NA, which is exactly the clause that is an issue in the Phillips-Harris case. And this court affirmed the order compelling arbitration in that case and said, quote, when an arbitration clause provides that it covers claims involving particular parties, the agreement has been made expressly for the benefit of those parties with respect to the third party beneficiary analysis. Memorandum of disposition? It was, Your Honor. And I appreciate we can look at it, see if we think it's right, agree with it or not agree with it. You consider it for its persuasive value, correct. But I do think, and this is not something I found authority for, you know, I understand using it in a different context as precedent is an issue where persuasive value is all that it should count for. But here we're talking about the very same clause involving the very same defendant. And I think therefore, you know, the court has an institutional interest in making sure this year that two cases that are that are indistinguishable from another. I'm going to push back a little on you in this. The first panel didn't want to make its decision precedential. And so it made a decision not to issue a disposition that bound future panels. I don't know why it made that decision, but it did. And therefore we are here, free as a bird, if you will, to decide this issue. So tell us why the first panel, I'm less impressed that the first panel decided it that way than why you think it was right. Yeah, sure. Well, I'd be happy to turn to that next, Your Honor. But again, I do think I don't want to dwell too much on this. But I think, for example, I was looking at FRAP 35. And I think in theory, if the court were to decide this case differently, you could you could, you know, claim they're two inconsistent decisions of the court. And if we were, we would cheerfully await an in-bank call from one of them. I understand. I completely understand that. You might give up on this one and tell us why you went on the merits. Yeah. So on the merits of this case, it falls it falls within the definition of the requirements for third party beneficiary contract laid out in the Guna Warden case, the first of which is, did the agreement confer a benefit on on BMW? It got the benefit of arbitration as to which there is an abundant body of federal law suggesting that that's a reason why that's a benefit in and of itself. It's something that is to be encouraged when an arbitration agreement applies. Yeah, but the test is not whether it's it incidentally benefits another party, the what you've got to show. And I appreciate your pointing me to what you've got to support. This is that something in the contract that manifests an intention to in the contract itself that manifest an intention to benefit the purported third party beneficiary. What do you have here? In each of the contracts, your honor, I have the breadth of the definition of the claim that is subject to arbitration, as including in the Phillips Harris case claims that involve would reach assignees of affiliates. And that means and it's clear in that case that there was that BMW is the affiliate of BMW Financial Services, which was the assignee of the dealer. But the agreement doesn't. But that does that analysis of that clause essentially eviscerates the really more central contractual provision, which defines who agrees to arbitrate. Let me let me turn to that, your honor. So with respect to the question of the the you, the we, the I first in the Phillips Harris case, just just so I know, and I'm sure the court's aware that the definition of you there extends to assignee. That's what it says on in the excerpt of Record 66. But most importantly, the central argument that's being made in both by the appellants in both cases is that that language, the you and the I parts of these clauses is critical. And that's inconsistent with the way you look at third party beneficiary contracts. Assume for a moment that we are focusing on the you and I language in the no case. Tell me how BMW of North America fits within the you or I even taking into account employees, agents, successors or assignments. It fits within the you or I by virtue, not by virtue of the specific you or I language. But you've got to read all of the language of the contract together, as Judge Wardlaw pointed out, how the claim is defined. It seems somewhat inconsistent with taking a narrow definition. So if I could maybe simplify this, Mr. on the other side, they say the claim is defined broadly enough to cover this if we had the right parties. You're saying the claim is so broad that the language about the parties should be interpreted differently. The claim is the claim is broad enough that you interpret the scope. We're just trying to read this language about you and your in in ordinary English terms. It would not include your client, correct? It has to be informed by the whole agreement, right? Your view is that the definition of claim is so broad that the definition of you and yours should be broadened past its plain language to include your client, which I buy us. No, but but may I may I say there there's an there's an important additional facet to why I say that if any. And it has to do with the way the California Supreme Court has described the analysis of third party beneficiary contracts in the Guna Warden case. And what the court said there is, and I'm going to just read this if you don't mind, because it seems to me central. We observe that academic commentators have pointed out that the parties to a contract are typically focused on the terms of performance of the contract rather than on the element. Accordingly, the third element of the task does not focus upon whether the parties specifically intended third party enforcement, but rather upon whether taking into account the language, the contract and all of its relevant circumstances under which the contract was entered, permits the third party to bring a breach of contract cause of action, because that would be consistent with the objectives. The point being that when third party beneficiary contracts are drafted, they're not drafted with an eye toward the possibility of third party beneficiary contracts. So the fact that they do not have enforcement mechanism or that the language doesn't capture the possibility of such enforcement is not a reason to deny the third party beneficiary I have problems with that line of argument. I mean, your client drafted the contract. This is your client's contract. So if there was any intention to wish to cover an affiliate, you could have easily just simply said that. Well, your honor, I think it's not clear whether the contract was drafted by BMW or by the dealer, but it's certainly not the plaintiff. I grant you that. But but the point is, when you the third party beneficiary contract principles, the Supreme Court of California has told us that you don't look to see if the contract contemplates the third party beneficiary, you apply this test. And it's natural that people drafting part of the test, part of the test is reading the contract. Yes. Seeing, for example, whether it manifests any intention to benefit a third party. And with respect to the case, it makes very clear that it manifests the intention to apply to any resulting transactions or relationships that grow out of the contract. And it's understandable that the contract might not have been able to contemplate how enforcement might go forward with respect to every such circumstance. But that approach, it seems to me, rubs up against the fundamental principle of arbitration law, which is that arbitration is consensual. What your your position seems to me to be opening up a wide door for implied or inferential agreements to arbitrate, which is not a road we like to go down. Your Honor, I would respectfully disagree with you that we're okay. What we're doing is we're is we're just saying that, and this is consistent with California law, that third party beneficiaries may enforce arbitration rights in contracts if they qualify for that status. And then you then take the Guna Wardenate Court principle, which says that when you're trying to determine whether the contract is intended to extend third party beneficiary rights, you don't look to see whether or not it specifies those rights or makes room for their enforcement, because that's not the typical way contracting parties operate. However, here, the breadth of this clause in in each case, certainly reaches this kind of a claim. I'm not sure I understand. I'm not sure I understand that argument. Assuming that this is a real contract, not a contract of adhesion. The two parties got together and said, we'll define the parties that may demand arbitration, and they may demand it about anything that has any relationship to this contract. We want to make this as broad as possible. We don't want to leave any loopholes. But how does that express to me a determination by the parties that they meant outsiders to be able to invoke the contract, non-signatories? The breadth of normal contract principles that these two parties intended to have a very broad arbitration agreement between themselves. I want to come back to have Jackie in, by the way, because I think you overstate what it says. But let's, let's see if you can deal with this issue. Yeah, Your Honor. The point is that the party, the parties do not continent do not have to to benefit this third party because it was their decision, not yours. So tell me why I can read from their broad definition of claim, any intent to benefit the third party. The fact that they are extending the clause to apply to the NEO case, to any sort of resulting transaction or relationship involving a third party. How do you give that meaning if you don't recognize the fact that it seems to me all that means is that we want an arbitration when we get one that's not illusory, that can resolve the controversy between you and we. Sure. But, but Your Honor, that clause is preface. We need a broad, we need a broad arbitration clause because once you get to arbitration, you don't want a situation where one of the parties is saying, well, gee, you know, we agreed to go to arbitration, but we never agreed to arbitrate anything like have an arbitrary to decide anything like this. But, but Your Honor, it's important to note that the clause in the NEO case is prefaced with an or. So in other words, when you're talking about the actual relationships that grow out of the contract, that's the first part of it. But then it says or resulting transactions or relationships that are related to this to this particular transaction. So it's obviously capturing more than just the particular events associated with this particular contract and opening the way to third party. Let's go back to his jet. Jetki and I don't want to suggest it's precedential, but that case actually supports your position. That's case in which BMW Financial was referred to as one of the use in the in the contract, and therefore the affiliate clause covered BMW BMW of North America. You're not true here, is it? Well, it is in part in Philip Harris. Tell me where in the contract BMW of North financial is referred to as you, Your Honor. Remember, we got two cases in both of them in neither of them. You agree with me and neither of them is BMW financial defined as you know, Your Honor, in Phillips Harris, in Phil in Phillips Harris, we're dealing with BMW bank, actually, as opposed to BMW financial services, right? The definition of you and your is, is the same as the one that doesn't name them, does it? Well, no, but it refers to where where are they defined as you, I understand that your, your assignees are included. Yes, but in the Jackie and the issue was because BMW financial was named, and affiliates of you, those who are named were also included, and therefore BMW of North America was included. In our case, you're asking us to, to extend it to an affiliate of an assignee, or you know, I am and what language in the contract tells me I can extend it to an affiliate of an assignee? Your Honor, the contract does not, the contract says, says that the you includes an assignee. And then the claim definition in Phillips Harris has the affiliate language. That's exactly as it was in Hedge Beckian. In Hedge Beckian, the financial services company was not a defendant, nor was it specifically named. The decision says the agreement specifies that me refers to Hedge Beckian, and you or you are referred to Pacific BMW and its assignee. Yes, and that's what the decision says. That's true in Phillips Harris at excerpt 66. No, no, I'm looking at the at the Phillips Harris provision. It says any claim between me, you and your employees, directors, affiliates, successors or assigns. So I understand the claim against an assigned would be covered. I think this is one that says an assigned is a is included in you and affiliates of you can be sued. Paragraph two, second line, Exhibit 66, Excerpt 66. You and your referred to the lesser or the lesser's assignee. Yes. So so it's the same as Hedge Beckian, I think, Your Honor. But but yeah, but I understand that the that the lesser's assignee is covered. Yes. Tell me where the language is that says affiliates of assignees are covered. That that's the part from the the claim definition that talks about an affiliate, which is an excerpt of record. OK, this relies on your broad definition of claim. It's not in the definition of you or your. No, and it wasn't in Hedge Beckian. Well, that's not what the opinion says. We actually don't know. We actually don't know what it was in Hedge Beckian. And I think that's one of the problems with asking us to rely on that case. So the second fundamental problem with relying on Hedge Beckian is that they never cite the third party beneficiary key case, critical case under California law. I can't pronounce it. Gunnawarden. They don't cite it. They don't they don't go through the analysis of the three prongs and particularly the prong number two, which is the motivating purpose of the contract needs to benefit the third party and express examples that they give, which is like being a beneficiary of a will or owners of money held in a trust fund and managed by others. This is not that. This is not what the California Supreme Court was talking about when they talked about third party beneficiary. Maybe you can explain that to me, how a motivating purpose of this contract is to benefit the manufacturer. The motivating purpose, again, I fall back on the on the scope of the language as indicative of what the motivating purpose is. And let me also, I think what's relevant here also, though it's principally implicated in the equitable estoppel argument, is the Felicilda case, because one of the points the Court of Appeal made in the Felicilda case is it is specifically addressed this you your point in the course of making its decision not to follow a federal district court case called Jourowsky. And the reason it distinguished that language that says it paid six forty nine, six forty nine of the Cal Reporter site. The reason it distinguished that case is because it said that in the in the in the Felicilda case, just as in this case, we have a language which is which talks about third party claims and is hence broad enough to disclose the party's intent. And so one thing that has just troubled me, and I guess I'm just going to articulate it, is if if, in fact, the manufacturer BMW North America was intended to be a beneficiary of this why didn't they just include it in the you and your? They they include the S and E. Why couldn't they say and the vehicle's manufacturer? Wouldn't that have just solved this problem? There would be no question. Well, in the light of my experience this morning, I wish they had. But I can't I can't explain. No one's blaming you. I can't explain. No, you didn't write it. You know, we can always look back on circumstances with a contract and say, boy, it could have been different. I really do think it's critical to go back and focus on the part of the Guna Wardenate case where the court made clear that the fact that a contract is not written at all in contemplation of third party beneficiary rights is absolutely normal and to be expected in circumstances like this. And so I don't think you can assign too much significance to the fact that the enforcement mechanism doesn't have built into it a mechanism for addressing those those rights. Counselor, do you honestly think that Phillips Harris knew she was signing on to an arbitration agreement against the manufacturer when there's nothing that says that in this lease agreement? This the breadth pardon me, the breadth of the of the of the terms of the contract with respect to what it covers indicates that it would apply that far, particularly juxtaposed against the nature of third party beneficiary and and California rules about equitable estoppel. And, you know, she she could have consulted a lawyer about those things if she wanted to. You know, I heard reference early to an adhesion contract. There's never been any claim about the enforceability of the agreements in this case. And so so that the I do think the clause reaches the scope that we're talking about. Now, I see that I'm over my time. I haven't had a chance to talk particularly about the equitable estoppel issue. And there I would simply point out that the California Court of Appeal decision in Felicita turns repeatedly in its application of equitable estoppel on the breadth of the language that's used with respect to the covered claim. And I would like to respond to the point that Felicita, I know Judge Parker asked about this, that Felicita somehow is distinguishable and hence not something that the court should apply in the Erie context. The Felicita case is not distinguishable because at the point at which the Court of Appeal was focusing on whether or not to uphold the arbitration order, the dealer was no longer in the case. The dealer had been dismissed. The case is an appeal challenging an arbitration award that had gone against the manufacturer only. So the issue in the case is totally focused on whether the arbitration against the manufacturer, the non-signatory was proper. Was the dealer still in the case when arbitration was compelled? Your Honor, my memory is that they were and then they dropped out after that point. So really what they're reviewing is an order compelling arbitration. And at the time the challenge at that point, the only relevant challenge is the challenge that's related to the part of the arbitration that led to the award against the manufacturer distributor. So at that point, the dealer's role in the case is insignificant. And if you look at the analysis of the Court of Appeal as to why it is that equitable estoppel was properly applied, there's nothing at all about the analysis that suggests it makes any difference whether or not the dealer was the moving party or not. The point is that the scope of the arbitration clause is what the Court of Appeal fastened upon in that case as being the crucial determinative factor. And let me finally say with respect to the request to certify the case to the California Supreme Court, that's always an option the court has in these kinds of cases. I would note that Ms. Bennett was, as Ms. Bennett well knows, because she was counsel in the California Supreme Court for Phyllis Hilda, this was a aggressively disputed decision as to which the Supreme Court denied review quite recently. So unless the court, I see I've significantly overstayed my time. So unless the court has questions. Thank you, counsel. And Ms. Bennett, I think you have about two and a half minutes left. Great. I think I just I want to go to straight to Phyllis Hilda and just make a few points there, unless the court has questions on the third party beneficiary argument. So you have one. So let me just get it out of the way for you. Oh, I know you're in the no case and I know that had your Becky and contract is not the same as the no contract. Sure. Is it the same as the Phillips Harris contract? I don't know what it's hard to tell from the opinion and how to make it. I think it is possible that it is the same as the Harris contract. That's not clear. You've said what I thought, too. So now go on to what you wanted to say. Sure. So so I want to I want to take up Judge Parker's question about the dealership and when the dealership was was in and what decision, rather, the California Court of Appeal was reviewing here. And the decision was the trial court's decision to compel arbitration at the request of the dealer. That is what the California Court of Appeal was reviewing. And Mr. Peterson has said that the language of Phyllis Hilda demonstrates that that didn't matter. But in fact, it demonstrates exactly the opposite. Mr. Peterson relies on the fact that Phyllis Hilda discussed the scope of the arbitration clause. And that is not despite the use of the term equitable estoppel, that is not what you do in equitable estoppel. The whole point of equitable estoppel is that the terms of the arbitration clause do not apply to the party seeking to compel arbitration. That's why the party invokes equitable estoppel. And so the Phyllis Hilda court's reliance on the terms of the arbitration clause, though they make perfect sense in the context of looking to see can a dealership compel arbitration of a case, even though that case also involves a third party. And so in that factual circumstance, that's what makes sense of the Phyllis Hilda court's decision of its use of its looking to the terms of its holding that, sure, dealership, the we and you and we can compel arbitration because the scope of this dispute is within what the claims are. That's not what we have here. There's no textual basis here for anybody to compel arbitration against Ms. Ngo because the dealership is not in this case. The you or we here is not trying to compel arbitration. And so Phyllis Hilda just really doesn't apply in this context. And again, I'll reiterate that this court's goal is to really determine what the California Supreme Court is going to do. And over and over again, the California Court of Appeal and this court applying California law have held what equitable estoppel is, is that we look to the party's claims and we see if those claims are trying to enforce the contract. Can I ask you a question about that? Do you think if we were predicting where the California Supreme Court, we're going to decide a case that we think it would adhere to its prior separate jurisdiction for arbitration cases on equitable estoppel or would join the rest of the world in just applying general equitable estoppel principles? I think it is quite likely that the California Supreme Court may end up joining the rest of the world. That is, as they consider this question about whether Arthur Anderson says you return to actual traditional state law. I think it's quite likely that when California Supreme Court takes a look at that, they'll say, yes, that applies to us too. This is a weird rule that just arisen in the context of arbitration. Of course, this court in Kramer, when it looked at California law, it said that this is what California law requires. So I think certainly if this case were certified to the California Supreme Court, it could rule that actually taking a look after Arthur Anderson, what we're going to say is the same equitable estoppel principles apply here and everywhere else. Even if it did stick to an arbitration specific rule, I think it would adopt the rule that every other California Court of Appeal has adopted. I don't think there's any reason to think it would adopt this idiosyncratic rule that literally no other court in California or otherwise has adopted. I was asking a slightly different question. Oh, I apologize. I guess if California brought itself into uniformity with what the rest of the country seems to be doing, equitable estoppel would require detrimental reliance. I don't think there's any argument in this case on either side that there was such. That's absolutely right. And I think it would be very difficult for BMW to say it somehow detrimentally relied on a promise to arbitrate with a car dealership that it didn't know about, especially when its own warranty says that you don't have to arbitrate, you can go to court. And so BMW has never made an effort to make that showing. And I don't think it would be possible for it to do so in this case. Counsel, did I hear your opposing counsel say that this California Supreme Court recently denied review of the Felicitas case? That's correct. It did do that. But as this court explained, you can look at footnote three, for example, of KF Berries. It's well established that the California Supreme Court denial of review is no expression on the merits. I understand that completely. I'm sure if it just denied review of that issue, why would it accept a certification request from us on the same issue? You know, I think part of the reason the opposition to the petition for review in that case was all about how there were these unique factual circumstances in Felicita and how the was the trial court compelling arbitration at the behest of the dealership. And what the opposition said is, look, if this starts to come up in other contexts, maybe it makes sense to then grant review. But here it's this weird context where the dealership itself was compelling arbitration, and maybe it just isn't going to apply. And so it's possible to interpret the California Supreme Court's denial of review in that case as waiting to see if courts are going to be confused by the Felicita decision, which is clear now that they are, or whether they're going to realize that this is kind of a one-off where the dealership was compelling arbitration. And on that view, maybe it is within the terms of the arbitration clause. So it's not clear to me that the court would deny review now that it's clear that it is coming up in other cases. But I also think the California law, you know, Felicita as an outlier aside, California law and equitable estoppel in the arbitration context has been clear for years, as this court has recognized repeatedly. And so this court doesn't need to certify to understand what California law requires and to understand that it doesn't apply in this case, because there's nothing in Ms. Noe's claims that requires the financing agreement. All right. Thank you, counsel. Thank you. Thank you both for your excellent arguments. Phyllis Harris versus BMW of North America and Noe versus BMW of North America will be submitted and will take up Ellington versus Eclipse.
judges: WARDLAW, Parker, HURWITZ